IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNIE ROCQUEMORE, # B-12600, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-cv-01261-JPG |
| | ) |
| S. A. GODINEZ, WENDY BLANK, | ) |
| RICHARD YOUNG, TERRY WILLIAMS, | ) |
| RICHARD HARRINGTON, | ) |
| REGINALD ADKISSON, | ) |
| CYNTHIA LYNCH, C. LARENSON, | ) |
| AMY LANG, DR. ROBERT SHEARING, | ) |
| and M. MOLDENHAUER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

     Plaintiff Johnnie Rocquemore, an inmate who is currently incarcerated at Menard Correctional Center, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff is serving an 8-year sentence for manufacturing and/or delivering cocaine. Plaintiff now sues eleven defendants—including officials from the Illinois Department of Corrections ("IDOC"), Menard Correctional Center ("Menard") and Western Illinois Correctional Center ("Western")—for deprivation of his constitutional rights. According to the complaint, Defendants conspired to chemically castrate Plaintiff by placing him on an "involuntary therapeutic diet," resulting in myriad untreated health problems. Plaintiff now seeks monetary damages (Doc. 1, p. 25).

1

**The Complaint**

Specifically, the complaint alleges that Defendants have conspired to chemically castrate Plaintiff by forcing him to consume an involuntary therapeutic diet[1] (Doc. 1, pp. 9, 22-24). The purpose of this diet is to "sup[p]ress and control [Plaintiff's] sexual desires/nature to render [him] impotent" (Doc. 1, p. 22). The complaint alleges that the diet "amounts to a form of punishment that [is] unwarranted and causes . . . bodily harm" (Doc. 1, p. 9).

Plaintiff transferred to Western on July 12, 2011 (Doc. 1, p. 10). After consuming an IDOC diet for several months, Plaintiff began suffering adverse health effects. His symptoms included: migraine headaches; ear, nose, and throat irritation; abdominal pain; testicular pain; involuntary muscle spasms; diarrhea; and mouth infection (Doc. 1, p. 11). Plaintiff "infered indirect" [sic] that someone was tampering with his food.

He expressed these concerns to several prison officials, including Defendants Young (Western warden), Lynch (Western mental health coordinator), and Adkisson (IDOC psychologist) (Doc. 1, p. 10). They assured Plaintiff that he was not being given a special diet or contaminated food. Plaintiff was instead diagnosed as being delusional.

On May 20, 2012, Plaintiff put in a sick call request to address these health concerns (Doc. 1, p. 11). Defendant Larenson (Western nurse) met with Plaintiff on May 27, 2012. She offered him the option of seeing a doctor or dentist, although she was otherwise "indifferent" to him. Plaintiff chose to see a doctor. When three days passed without an appointment, Plaintiff went on a hunger strike on May 30, 2012. Defendant Lynch met with Plaintiff and scheduled an appointment the following day with a nurse,[2] who diagnosed Plaintiff with thrush.

---

[1] The complaint contains no description of the diet.
[2] This nurse is neither identified by name nor named as a defendant in this action.

Plaintiff wrote to Defendants Young, Blank (IDOC mental health director), and Williams (Western warden), asking them to review his involuntary therapeutic diet (Doc. 1, p. 12). They did not respond.

On January 30, 2013, Plaintiff was transferred to Menard. There, he continued to receive the diet (Doc. 1, p. 13). Food tampering and contamination continued. Plaintiff's thrush persisted.

Plaintiff wrote to Defendant Harrington (Menard's warden) about the diet. Plaintiff also submitted several sick call requests to address his health concerns, which included: a left testicular lump; black spots and warts on his penis; a tooth "being droped [sic] down from [his] gums;" mouth infection; and "other ailments" (Doc. 1, p. 13).

On April 12, 2013, Defendant Lang (Menard nurse) met with Plaintiff. He showed her his mouth (Doc. 1, p. 14). When Defendant Lang asked Plaintiff about his concerns with the forced therapeutic diet, he did not answer her questions. He considered the questions to be unrelated to his sick call request. She accused Plaintiff of being uncooperative and threatened to deny his request for a doctor's referral. Plaintiff later learned that Defendant Lang did, in fact, deny his referral request because he was uncooperative.

Plaintiff subsequently submitted a request for a doctor's appointment (Doc. 1, p. 15). In response, Defendant Shearing (Menard medical director) met with him on May 13, 2013. Although the complaint describes Defendant Shearing as "indifferent," he examined the knot in Plaintiff's left testicle and assured him that it was a harmless ruptured vein. He examined the black spots and warts on Plaintiff's penis and indicated that they were caused by a virus. He diagnosed Plaintiff with thrush and prescribed Nystatin. Defendant Shearing directed Plaintiff to

put in another sick call request to address any further medical concerns. Plaintiff did not want to wait to address these concerns.

On June 6, 2013, Plaintiff met with Defendant Moldenhauer (Menard nurse), who prescribed Valtrex for Plaintiff's thrush. Defendant Moldenhauer failed to address Plaintiff's other medical concerns (Doc. 1, p. 16). When Plaintiff later told Defendant Moldenhauer that the Valtrex was ineffective on September 15, 2013, Defendant Moldenhauer instead prescribed Nystatin, despite Plaintiff's warning that Nystatin was also ineffective.

Plaintiff continued to trace all of his health problems back to the involuntary therapeutic diet (Doc. 1, p. 16). He filed numerous grievances, which were ignored. He requested copies of his mental health records to learn more about his diet (Doc. 1, p. 18). In the process, he discovered documentation allegedly proving that he was receiving an involuntary therapeutic diet[3] (Doc. 1, p. 18).

Plaintiff now sues all Defendants for conspiracy to chemically castrate him using an involuntary therapeutic diet and to deny him adequate treatment for the resulting medical problems (Doc. 1, p. 19). According to the complaint, these ailments include: a left testicular lump; ruptured vein; body rash; severe scalp itching and flaking; severe eye irritation; blurred vision; ear, nose and throat irritation; heart acceleration; chest pains; shortness of breath; abdominal pain; diarrhea; testicular pain; genital warts and spots; penis "strinkage;" involuntary muscle spasms; shoulder burning; prostate pain and enlargement; buttock pain; tightening of back and thigh muscles; calf pain and swelling; severe right heel itching; heel blistering; peeling skin; high blood pressure; dropping of teeth from gums; whitening of his beard; mixing of semen

---

[3] These documents, which are identified as Exhibit G to the complaint, are largely illegible. However, a note does reflect Plaintiff's continued fixation on chemical contamination of his food (Doc. 1, p. 43). It appears that Plaintiff may have interpreted this note as proof that he was, in fact, administered a chemically altered diet.

and urine; "sharp brain pains;" severe migraines; and persistent mouth infection with sores (Doc. 1, p. 20). Plaintiff also claims that Defendants ignored his grievances. Plaintiff seeks monetary damages.

**Merits Review Under § 1915A**

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). After fully considering the allegations in the complaint, the Court deems it appropriate to dismiss certain claims.

**Discussion**

For purposes of the discussion, the Court finds it convenient to divide the complaint into four counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1:** Eighth Amendment claim against Defendants for inflicting cruel and unusual punishment against Plaintiff by attempting to chemically castrate him through the use of an involuntary therapeutic diet.

**Count 2:** Civil conspiracy claim against Defendants for doing the same.

**Count 3:** Eighth Amendment claim against Defendants for denying Plaintiff adequate medical treatment for diet-related illnesses.

**Count 4:** Fourteenth Amendment claim against Defendants for ignoring Plaintiff's grievances regarding his diet and health concerns.

**Count 1 – Chemical Castration**

After carefully considering the allegations in the complaint, the Court finds that it fails to state a claim against any defendants under the Eighth Amendment (**Count 1**) for chemical castration of Plaintiff through the use of an involuntary therapeutic diet. According to § 1915(d), this Court is required to dismiss a claim that is "frivolous or malicious." *Nietzke*, 490 U.S. at 319. "[T]he statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless . . . [such as] claims describing fantastic or delusional scenarios. . . ." *Id.* at 327-28. By every indication, the chemical castration scenario described in the complaint is just that.

6

According to the complaint, IDOC officials subjected Plaintiff to an involuntary diet at Western and Menard, in order to chemically castrate him. There is an absolute lack of support for this claim. The complaint is devoid of any allegations describing the actual diet, whether it is different from the diet of other inmates, and whether it resulted in any symptoms of chemical castration. Indeed, Plaintiff's only "proof" of this diet is a gut feeling. According to the complaint, Plaintiff "infered indirect" [sic] that someone was tampering with his food (Doc. 1, p. 11). Plaintiff also points to a notation in a mental health record as evidence supporting this claim. The record, which is included with the complaint and is largely illegible, merely reflects Plaintiff's fixation on a chemically altered diet (Doc. 1, p. 43). Count 1 is frivolous and shall be dismissed with prejudice.

**Count 2 – Civil Conspiracy**

The conspiracy claim (**Count 2**) against the defendants shall also be dismissed. Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under section 1983). However, conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). Plaintiff's conspiracy claim hinges on Count 1, which has been dismissed with prejudice as frivolous. Accordingly, Count 2 shall also be dismissed with prejudice.

**Count 3 – Denial of Medical Treatment**

After fully considering the allegations in the complaint, the Court finds that it states an Eighth Amendment medical needs claim (**Count 3**) against Defendants Shearing and

Moldenhauer for inadequate treatment of Plaintiff's thrush and genital warts. *See, e.g., Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). However, the medical needs claim shall be strictly limited to Defendants Shearing and Moldenhauer's treatment of these two ailments. Although the Court takes no position regarding the ultimate outcome of this claim, Plaintiff shall be allowed to proceed with Count 3 against Defendants Shearing and Moldenhauer at this time.

Count 3 fails against all other defendants and as to all other ailments. "Section 1983 creates a federal remedy against anyone who, under color of state law, deprives 'any citizen of the United States ... of any rights, privileges, or immunities secured by the Constitution and laws.'" *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012) (quoting 42 U.S.C. § 1983). A defendant can never be held liable under Section 1983 for negligence, or even gross negligence. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). Relevant to Plaintiff's claim, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*).

> Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

It is not necessary to determine whether every medical condition identified in the complaint is serious. This is because the claim fails to satisfy the subjective prong of the Eighth Amendment analysis, even at this early stage. To establish deliberate indifference, Plaintiff "must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297

8

(1991)). Officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834). Plaintiff is not required to establish that the officials "intended or desired the harm that transpired," but to instead show that they "knew of a substantial risk of harm . . . and disregarded it." *Greeno*, 414 F.3d at 653.

The complaint specifically alleges that Defendants Larenson and Lang displayed deliberate indifference to Plaintiff's medical needs. With regard to Defendant Larenson, the complaint points to a 4-day delay (i.e., May 27-31, 2012) in scheduling a doctor's appointment for diagnosis and treatment of Plaintiff's thrush. The allegations do not suggest that the 4-day delay was substantial or detrimental to Plaintiff's health. The complaint does not allege that any symptoms were exacerbated by the delay. Certainly, the allegations do not suggest that Defendant Larenson, in offering Plaintiff the option of seeing a dentist or doctor for the condition, displayed deliberate indifference to his medical needs by failing to obtain an appointment with his preferred treater the same week.

With regard to Defendant Lang, the complaint is clear that Plaintiff was denied a doctor's referral after being generally uncooperative at his appointment with Defendant Lang. He was warned that his unwillingness to answer basic questions would result in the loss of a referral, and this is exactly what happened. It is difficult to understand how Plaintiff can make a serious argument that Defendant Lang was deliberately indifferent to his medical needs.

To the extent that Plaintiff raises this claim against the remaining defendants, including Defendants Godinez, Blank, Young, William, Harrington, Adkisson, and Lynch, it also fails. The complaint does not allege that any of these defendants personally participated in treating

9

Plaintiff. Rather, it alleges that these defendants ignored his grievances. When a prisoner is under the care of prison medical professionals, a non-medical prison official "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). "A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to provide a gratuitous rescue service." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). The allegations make it clear that Plaintiff was under the care of medical professionals. The remaining defendants justifiably relied on this fact.

Finally, Plaintiff cannot proceed with any claim that he was denied adequate medical care for ailments other than thrush and genital warts. The complaint contains an exhaustive list of questionable medical conditions, ranging from a white beard to penis "strinkage." The Court will not waste time analyzing whether each and every condition is serious and whether Defendants were deliberately indifferent to it. The complaint simply does not contain sufficient factual allegations to suggest that any particular defendant denied Plaintiff treatment on a particular date for any specific condition, other than thrush and genital warts. Without more, Plaintiff shall not be allowed to expand his Eighth Amendment claim beyond these two conditions.

Based on the foregoing discussion, Plaintiff shall be allowed to proceed with Count 3 against Defendants Shearing and Moldenhauer for inadequate treatment of Plaintiff's thrush and genital warts. Court 3 shall be dismissed against all other defendants.

**Count 4 – Ignoring Grievances**

The complaint does not state an independent claim against any defendants for failing to respond, or provide satisfactory responses, to Plaintiff's grievances (**Count 4**). Prison grievance

procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Plaintiff shall not be allowed to proceed with Count 4 against Defendants based on their failure to respond to his grievances. Accordingly, Count 4 shall be dismissed with prejudice against all defendants.

**Pending Motions**

Plaintiff has filed a motion for recruitment of counsel (Doc. 3), which is **REFERRED** to a United States Magistrate Judge for a decision on its merits.

Plaintiff has also filed a motion (Doc. 5) for free copies of the documents he electronically filed with the Court on December 5, 2013. This motion is **DENIED**. The Court is under no obligation to furnish free photocopies to indigent litigants. *See Robinson v. Miscellaneous*, No. 09C0148, 2009 WL 1649697, at *4 (E.D. Wis. June 11, 2009) (citing *In re Richard*, 914 F.2d 1526, 1527 (6th Cir. 1990)). As a general rule, the District Clerk will mail paper copies of any document to a party only upon prepayment of the required fee. According to 28 U.S.C. § 1914(b), "[t]he clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States." The Judicial Conference Schedule of Fees section (4) provides that a fee of $.50 per page shall apply for reproducing any record or paper. The Clerk is **DIRECTED** to mail Plaintiff a copy of the docket sheet in this case. Should Plaintiff desire copies of any documents from the court file, he should request the document(s) by number and send the required prepayment.

**Disposition**

IT IS HEREBY ORDERED that **Count 1** is **DISMISSED** with prejudice because it is frivolous. Counts 2 and 4 are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

IT IS ALSO ORDERED that Defendants **GODINEZ, BLANK, YOUNG, WILLIAMS, HARRINGTON, ADKISSON, LYNCH, LARENSON,** and **LANG** are **DISMISSED** from this action without prejudice.

AS TO COUNT 3, the Clerk of Court shall prepare for Defendants **SHEARING** and **MOLDENHAUER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is

entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including a decision on Plaintiff's motion for recruitment of counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: January 9, 2014**

                                        *s/ J. Phil Gilbert*
                                        United States District Judge